IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MIGUEL VELASCO, ELIESER SERRANO,
NICOLAS VELASCO, individually and acting
in the interest of other current and former
employees,

        Plaintiffs,                        No. CIV. S-08-0520 WBS EFB

    vs.

MIS AMIGOS MEAT MARKET, INC,
and URIEL GONZALEZ,                 FINDINGS AND RECOMMENDATIONS

        Defendants.
_____/

On December 3, 2008, this court heard defendants' motion, filed October 29, 2008, to set aside the default entered against them by the Clerk of Court on April 24, 2008.[1] Joan E. Presky appeared on behalf of defendants. Plaintiffs were represented by Stanley S. Mallison. Upon review of the motion and supporting documents, consideration of the parties' oral arguments, and good cause appearing, the court now issues the following findings and recommendations.

---

[1] This case was referred to the undersigned pursuant to E.D. Cal. L.R. ("Local Rule") 72-302(c)(19) and 28 U.S.C. § 636(b)(1). Although Local Rule 302(c)(19) expressly refers to the magistrate judges only motions for default judgment pursuant to Fed. R. Civ. P. 55(b)(2), it is the practice of this court also to refer to the magistrate judges motions to set aside default pursuant to Fed. R. Civ. P. 55(c), for findings and recommendations.

1

BACKGROUND

Plaintiffs filed their complaint on March 6, 2008, as "a wage and hour action to vindicate the rights afforded employees by the Fair Labor Standards Act, 29 U.S.C. §§201 et seq. ('FLSA'), the California Labor Code, California Business and Professions Code, and California contract and common law." Compl., at ¶ 1. Defendant Mis Amigos Meat Market, Inc. ("Mis Amigos"), is a California corporation with its principal place of business in Bay Point, California, and operates a retail grocery business in Woodland, California. Defendant Uriel Gonzalez ("Gonzalez"), is the owner and agent for service of process for Mis Amigos. *Id.* at ¶¶ 17-18.

Plaintiffs were employed by defendants as non-exempt employees to perform various tasks including, but not limited to, preparing and stocking produce and meats. *Id*. at ¶ 3. Plaintiffs claim, *inter alia*, that defendants denied them minimum wages with rest and meal periods or compensation thereof, overtime wages, and accrued vacation pay. Gonzalez is sued pursuant to the California's Private Attorney General Act ("PAGA"), Cal. Labor Code §§ 2698 *et seq*., which empowers aggrieved employees to recover penalties resulting from wage and hour violations on behalf of himself, the State of California and all current and former employees of a defendant. *Id*. at ¶ 2.

On April 16, 2008, plaintiffs filed returns demonstrating service of process upon Gonzalez and Mis Amigos on March 24, 2008. *See* Docket Nos. 6, 7. On April 21, 2008, plaintiffs filed amended returns setting forth the time of the alleged service of process, and clarified that defendant Gonzalez was served both individually and on behalf of defendant Mis Amigos. *See* Docket Nos. 8, 9. Pursuant to plaintiffs' request filed April 21, 2008, the Clerk entered default against defendants on April 24, 2008. Dckt. No. 12.

////
////
////

On October 29, 2008, defendants filed the instant motion pursuant to Fed. R. Civ. P. 55(c), asserting, *inter alia*, that good cause exists for setting aside the Clerk's entry of default.[2]

LEGAL STANDARDS

Rule 55(c), Federal Rules of Civil Procedure, provides that "[t]he court may set aside an entry of default for good cause." "Good cause" is assessed by the court's consideration of the following factors: whether default is attributable to culpable conduct by defendant; whether defendant has a meritorious defense; and whether setting aside default will unfairly prejudice plaintiff. *See TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001). These factors are disjunctive, and the court may vacate entry of default if any of the three factors is true. *Franchise Holding II, LLC. v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 926 (9th Cir. 2004) (citation omitted). It is within the court's reasonable discretion to determine whether good cause has been shown. *See Madsen v. Bumb*, 419 F.2d 4, 6 (9th Cir. 1969); *Curry v. Jensen*, 523 F.2d 387, 388 (9th Cir. 1975). The court's discretion is particularly generous where the motion seeks to set aside entry of default, rather than default judgment. *Mendoza v. Wight Vineyard Management*, 783 F.2d 941, 945 (9th Cir. 1986). Any doubt should be resolved in favor of setting aside a default, in order to decide cases on their merits. *Schwab v. Bullock's, Inc.*, 508 F.2d 353, 355 (9th Cir. 1974).

DISCUSSION

The hearing on defendants' motion focused on two matters: (1) defendant Gonzalez' averment that, while he received a copy of the complaint in the mail, service of process was never made upon him;[3] and (2) the parties' extended communications prior to the filing of

---

[2] The court need not reach defendants' other contentions in support of their motion to set aside default.

[3] In his declaration, defendant Gonzalez stated:

¶ 2. I was not and have never been personally served with any summons or complaints relating to this Action.

3

plaintiffs' motion for default judgment.

Notwithstanding the presumption created by the affidavits of the process server that service of process upon defendants was proper, *see, e.g.*, *In FROF, Inc. v. Harris*, 695 F. Supp. 827, 829 (E.D. Pa. 1988), and that defendants were also informed of this case by service of plaintiffs' request for entry of default on April 21, 2008, *see* Mallison Decl. at ¶ 13, and Dckt. Nos. 10 and 11, and pursuant to plaintiffs' letter dated May 29, 2008, *id*. at ¶ 22, and Exh. D, the court is persuaded that defendants have demonstrated good cause to set aside the default. Plaintiffs' efforts to obtain substantial documentation from defendants prior to moving for default judgment, and defendants' cooperation thereto, support defendant Gonzalez' representation that he reasonably believed, at least until October 2008, that such cooperation was serving to satisfy his obligations in this action. Moreover, it is now clear that defendants intend to proceed in the defense of this action, thus promoting the overriding public policy that cases be decided on their merits.

The chronology of this action is instructive. Following the Clerk's April 24, 2008 entry of default, the court, *sua sponte*, continued the initial scheduling conference from May 5, 2008 to July 14, 2008, "pending plaintiffs' filing of a motion for default judgment." Minute Order, filed April 28, 2008.

On June 24, 2008, plaintiffs "personally served" on defendant Mis Amigos a subpoena duces tecum in an effort "to obtain the documents necessary to perfect the judgment," Mallison Decl. at ¶ 25, although, as discussed *infra*, defendant Gonzalez states that he did not receive the subpoena until October.

---

¶ 3. I did receive the Complaint, by mail. I do not remember receiving the summons, and I did not know that I was supposed to respond or do anything with the court. Even if I did receive the summons, which I do not remember receiving, I did not understand that I had to file something with the Court. Maybe I should have understood it, and I am sorry if I made a mistake, but I did not understand that I supposed to do that.

Gonzalez Decl., filed Oct. 29, 2008, at p. 2

4

On July 7, 2008, plaintiffs sought further continuance of the scheduling conference because "[p]laintiffs have not yet obtained necessary documents from the defaulted parties, and the defaulted parties have requested an extension to comply with Plaintiffs' subpoena duces tecum.[4] Dckt. No. 14. The district judge granted plaintiffs' request on July 9, 2008, and continued the scheduling conference to August 25, 2008. Dckt. No. 15.

On August 19, 2008, plaintiffs again sought further continuance of the scheduling conference, on the ground that they required additional time to obtain documents from defendants pursuant to the subpoena duces tecum, in order to "calculate and prove-up damages" in their anticipated motion for default judgment.[5] Dckt. No. 16. The district judge granted the request on August 20, 2008, and moved the scheduling conference to November 3, 2008. Dckt. No. 17.

Thereafter, on October 7, 2008, plaintiffs filed in the Northern District an application to enforce their subpoena duces tecum (Case No. 4:08-mc-80192-CW). *See* Mallison Decl., Dckt. No. 27, ¶ 26, and Exh. G; *see also* Presky Decl., Dckt. No. 20, ¶ 6, and Exh. D.

---

[4] Plaintiffs presented the following argument in support of their first request to postpone the scheduling conference: "Upon entry of default, Plaintiffs promptly sought to obtain the necessary evidence to support their motion for judgment and present at a prove-up hearing. However, the documents requested have not been produced, and *Defendants have requested an extension of time* to comply with a subpoena duces tecum that Plaintiffs served. Whereas Plaintiffs have not yet obtained necessary documents from the defaulted parties, and the defaulted parties have requested an extension to comply with Plaintiffs' subpoena duces tecum, Plaintiffs request that this Court continue the scheduling conference currently calendared for July 14, 2008 to August 25, 2008 . . . ." Pls.' Req. for Cont. of the July 14, 2008 Sched. Conf., Dckt. No. 14, at p. 2 (emphasis added).

[5] Plaintiffs presented the following argument in support of their second request to postpone the scheduling conference: "On June 24, 2008, Defendant Mis Amigos Meat Market, Inc. ("Mis Amigos") was personally served with a subpoena duces tecum seeking document necessary to establish damages for purposes of Plaintiffs' motion for judgment. Pursuant to the subpoena, production of documents was set for July, 10, 2008, but extended the to July 23, 2008 per request of Mis Amigos, which needed additional time to gather the requested documents. Mis Amigos failed to comply with the subpoena and did not produce any documents. Plaintiffs have subsequently discussed production of documents with Mis Amigos and have amended the subpoena so as to order production on a new date and different place. Before filing their motion for judgment, Plaintiffs need to obtain documents to calculate and prove-up damages." Pls.' Req. for Cont. of the August 25, 2008 Sched. Conf., Dckt. No. 16, at p. 2

On October 29, 2008, defendants filed the instant motion to set aside default. Dckt. No. 18. In his declaration, defendant Gonzalez stated that he retained defense counsel on October 21, 2008, after receiving "faxed documents from plaintiffs' counsel including a court order," which was the Northern District's October 8, 2008 order to show cause why a contempt citation should not issue against defendants for failing to obey plaintiffs' subpoena duces tecum.[6] Gonzalez Decl. at ¶ 8-11, Exh. F. Gonzalez avers that he had not previously seen the subpoena, that it had been left with a store manager (who was not an authorized agent), who "gave it to somebody in the office for them to give to me, but it was not given to me." *Id*. at ¶ 9

Defendant Gonzalez' declaration recounts his attempts to cooperate with plaintiffs' counsel after this action was filed. He states that he went to the office of plaintiffs' lawyers and provided all documents relating to plaintiff Serrano, and all current employment records, including payments of overtime wages; that he began to seek representation only when plaintiffs' counsel indicated that they wanted not only the employment records for remaining plaintiffs Miguel Velasco and Nicolas Velasco, but all employment records commencing March 2004; and that he retained counsel upon receipt of the faxed order to show cause from the Northern District and the threat of plaintiffs' counsel that they would enforce compliance unless permitted to come to Gonzalez' office and scan all of his records .[7] *See* Gonzalez Decl., Dckt.

---

[6] At the hearing on this matter, defense counsel stated that defendants had sought deferral of the Northern District order to show cause pending a decision by this court on defendants' motion to set aside.

[7] Defendant Gonzalez' declaration provides in pertinent part:

¶ 4. When I received the Complaint, I called the attorneys for the plaintiffs. I asked them what this was about. They [FN] told me that they wanted documents relating to [plaintiff] Elieser Serrano. I made at least two appointments to of to the plaintiffs attorneys' office. There were appointments that I did not show up for, because I was busy, overwhelmed, and suffering from medical problems. But I had many conversations with the plaintiffs' lawyers. They told me that they wanted documents relating to Elieser Serrano. [Orig. FN. "I say 'they' because I talked with different lawyers and I don't know which one I talked to."]

¶ 5. The plaintiffs' lawyers kept telling me that they wanted documents.

6

No. 21. Gonzalez concludes:

> I am not accusing the plaintiffs' lawyers of purposefully misleading me. But I thought that all they wanted was the documents, and that I was trying to work it out. Mail about the case arrived at the Bay Point store, but I was frequently not made aware of it. I have not been at the Bay Point store frequently. These is mail about the case I did not see until after I retained counsel and began an intense search for documents related to the matter. I did not understand about the lawsuit or the response or the default until after I first consulted with the Huddleston Law Group on October 21.

*Id.* at ¶ 15.

Defendants thus contend that their failure timely to appear in this action was based upon defendant Gonzalez' reasonable belief that he was meeting plaintiffs' demands by providing the documents they requested; that he began to seek counsel when plaintiffs' demands appeared unreasonable; and that he promptly retained counsel when informed of the Northern District's enforcement of the subpoena duces tecum. At the hearing on this present motion, defense counsel explained that defendants comprise a small business consisting of two grocery stores, and that Mr. Gonzalez believes he properly compensated his employees but seeks to remedy any

---

¶ 6. In August or September 2008, I went to the plaintiffs' lawyers' office and gave them the documents relating to Elieser Serrano. I watched while they (the three lawyers) scanned the documents. I also brought with me documents that showed that I kept good employment records, including payments of overtime wages. I brought those documents with me so they could see that I kept good records. I gave them those documents. I believe that they scanned those documents too. They told me that they also wanted documents relating to all of the employees going back to March 2004. I told them I would get them documents relating to [plaintiffs] Miguel Velasco and Nicolas Velasco, but they said no, they wanted documents relating to all of the employees. I told them that I want to consult with a lawyer. [Orig. emphasis.]

¶ 7. I made many efforts to find a lawyer. I have consulted with lawyers but I did not find one that I was comfortable with.

¶ 8. I continued to talk to the lawyers for Serrano and Velasco. I told them several times that I was trying to get a lawyer. I told them I needed help. Serrano's lawyers kept telling me that they wanted the documents and they wanted to come to my office to scan all of the documents . . . that if I did not cooperate with them, they were going to go to court and get an order, and that I had to let them come to me office and scan all of the documents. They said there was a subpoena . . . .I told them that I did not know what subpoena he was talking about . . . I did not receive a subpoena . . . I asked him to send a copy. They faxed the subpoena. . . .

Gonzalez Decl., at pp. 2-4.

7

errors he may have made. Defendants argue that Gonzalez' conduct demonstrates no greater culpability than excusable neglect, and that plaintiffs will not be unfairly prejudiced by permitting this action to go forward for objective determination.

Plaintiffs respond that Gonzalez was purposefully dilatory, that plaintiffs sought to keep him fully informed of the progress of this action, and yet he purposefully refrained from retaining counsel for several months based on his tactical position that "he did not need to follow court procedures because he would be able to avoid any liability by filing for bankruptcy. . . . that he would 'wash his hands' of this liability through the bankruptcy process." Mallison Decl. at ¶ 11.

Even a final judgment of default may be successfully challenged based upon a showing of the defaulting party's "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1) (relief from final judgment). "Judgment by default is a drastic step which should be resorted to only in the most extreme cases. Where default results from an honest mistake 'rather than willful misconduct, carelessness or negligence' there is especial need to apply Rule 60(b) liberally. *Ellingsworth v. Chrysler*, 665 F.2d 180, 185 (7th Cir. 1981)." *United Coin Meter Co., Inc. v. Seaboard Coastline RR.,* 705 F.2d 839, 845 (6th Cir. 1983).

The court finds, on balance, that defendant Gonzalez reasonably believed, at least initially, that his informal cooperation with plaintiffs met his obligations in this case. This perception was likely reinforced by plaintiffs keeping Gonzalez informed of the progress of the case, e.g., plaintiffs served defendants with both requests to continue the scheduling order, Mallison Decl., at ¶ 23, and Dckt. Nos. 14 and 16. It is reasonable to conclude that Gonzalez understood the importance of formally appearing in this action only when he perceived the demands of plaintiffs' counsel to be overreaching and received a copy of the Northern District's order. Moreover, Gonzalez' threat of bankruptcy, however it may have been presented, was arguably no more tactical than plaintiffs obtaining repeated extensions of the court's deadlines in order to maintain leverage on Gonzalez to provide *all* of his employment records. Thus, the

8

court concludes that Gonzalez is not solely culpable for his failure earlier to appear in this action.

Additionally, defendants' general defense to this action warrants judicial resolution. "Likelihood of success is not the measure. Defendants' allegations are meritorious if they contain 'even a hint of a suggestion' which, proven at trial, would constitute a complete defense." *Keegal v. Key West & Caribbean Trading Company, Inc.*, 627 F.2d 372, 374 (D.C. Cir. 1980)(quoting *Moldwood Corp. v. Stutts*, 410 F.2d 351, 352 (5th Cir. 1969)).

Finally, the court finds that plaintiffs will not be unduly prejudiced by requiring that this case proceed on its merits. "[A] mere delay in satisfying plaintiff's claim, if he should ultimately succeed at trial, is not sufficient prejudice to require denial of a motion to set aside default." *Newhouse v. Probert*, 608 F.Supp. 978, 984 (D.C. Mich. 1985)(citing *Keegal, supra*, 627 F.2d at 374). Rather, a persuasive showing of prejudice would require more than what is inherent to all plaintiffs in setting aside the entry of default, because this factor must be counterbalanced with the more comprehensive general policy favoring trials on the merits.

Thus, defendants have made a persuasive showing of each of the three factors supporting an independent finding of good cause under Fed. R. Civ. P. 55(c). The court therefore concludes that the entry of default against defendants should be set aside, and that this case proceed on its merits.

CONCLUSION

Accordingly, based on the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to set aside the Clerk's entry of default, Dckt. No. 18, be GRANTED; and

2. Defendants be ordered to file their responsive pleading within twenty (20) days of any order adopting these Findings and Recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within ten days after being served with these findings and recommendations, any party may file written objections

with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 16, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE