IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL VELASCO, ELIESER SERRANO, NICOLAS VELASCO, individually and acting in the interest of other current and former employees,<br><br>Plaintiffs,<br><br>vs.<br><br>MIS AMIGOS MEAT MARKET, INC., and URIEL GONZALEZ,<br><br>Defendants.<br>_____/ | No. 2:08-cv-0520-TLN-EFB PS<br><br><br><br><br><br><br><br><br>FINDINGS AND RECOMMENDATIONS |

This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(19) and 28 U.S.C. § 636(b)(1) for hearing on plaintiffs' motion for entry of default judgment against defendants. ECF No. 74. A hearing on the motion was held on June 27, 2012. Attorney Stanley Mallison appeared at the hearing on behalf of plaintiffs; defendants failed to appear. At the hearing, the court requested supplemental briefing from plaintiffs. ECF No. 82. Plaintiffs filed the supplemental briefing on July 11, 2012. ECF Nos. 83-85.

For the reasons stated on the record at the hearing, as well as for the reasons stated herein, it is recommended that plaintiffs' motion for default judgment be granted.

/////

1

I. BACKGROUND

Plaintiffs filed this action in March 2008 on behalf of themselves and other current and former employees as "a wage and hour action to vindicate the rights afforded employees by the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ('FLSA'), the California Labor Code, California Business and Professions Code, and California contract and common law." Compl., ECF No. 1, ¶ 1. The complaint alleges: (1) violations of the Fair Labor Standards Act, 29 U.S.C. §§ 207(A), for failing to pay overtime wages; (2) violations of California Labor Code §§ 1997, 1194(A), 1194.2, and Wage Order 7 for failure to pay minimum wages; (3) violations of California Labor Code §§ 510, 1194, and 1194.2 for failure to pay overtime and double time compensation; (4) violations of California Labor Code §§ 227.3 and 1194(A) for failure to pay accrued vacation (Plaintiffs Miguel Velasco and Nicolas Velasco only); (5) violations of California Labor Code §§ 226.7, 512, and Wage Order 7 for failure to provide rest and meal periods or pay one hour of additional wages in lieu thereof; (6) violations of California Labor Code §§ 201, 202, and 203 for failure to pay wages due at termination in a timely manner; (7) violations of California Labor Code § 226 for knowing and intentional failures to comply with itemized employee wage provisions; (8) violations of California Labor Code §§ 223, 225, 226, and 206.5 for breach of written and implied contract; (9) violations of California Business and Professions Code §§ 17200 *et seq*. for unfair and unlawful acts in violation of unfair competition law; (10) violations of California Business and Professions Code § 17202 and Labor Code § 203 for unfair and unlawful acts in violation of unfair competition law; (11) violations of California Labor Code §§ 2698 et seq. for violation of Labor Code Private Attorney General Act (Plaintiffs Elieser Serrano and Nicolas Velasco on behalf of themselves and other current and former employees).

/////
/////
/////

1    Defendant Mis Amigos Meat Market, Inc. ("Mis Amigos"), is a California corporation
2 with its principal place of business in Bay Point, California, and operates a retail grocery
3 business in Woodland, California. Defendant Uriel Gonzalez ("Gonzalez"), is the owner and
4 agent for service of process for Mis Amigos. *Id.* ¶¶ 17-18.
5    Plaintiffs were employed by defendants as non-exempt employees to perform various
6 tasks including, but not limited to, preparing and stocking produce and meats. *Id.* ¶ 3. Plaintiffs
7 claim, *inter alia*, that defendants denied them minimum wages with rest and meal periods or
8 compensation thereof, overtime wages, and accrued vacation pay. Gonzalez is sued pursuant to
9 the California's Private Attorney General Act ("PAGA"), Cal. Labor Code §§ 2698 *et seq.*,
10 which empowers aggrieved employees to recover penalties resulting from wage and hour
11 violations on behalf of himself, the State of California and all current and former employees of a
12 defendant. *Id.* ¶ 2.
13    On April 21, 2008, the clerk entered the default of Mis Amigos Meat Market, Inc. and
14 Uriel Gonzalez. ECF No. 10. Defendants moved to set aside the default and on March 16, 2009,
15 the undersigned recommended granting the motion to set aside default and giving defendants
16 twenty days to file an answer. ECF No. 47. On April 2, 2009, the district judge adopted the
17 March 16 findings and recommendations and set aside the default against defendants. ECF No.
18 54. The order was amended on April 13, 2009. ECF No. 55.
19    Also on March 16, 2009, the assigned district judge held a hearing on defendants' then-
20 counsel's motion to withdraw. The court continued the hearing to March 30, 2009 in order to
21 give defendants time to obtain new counsel. ECF No. 48. The hearing was further continued to
22 April 13, 2009 and Gonzalez was ordered to personally appear at the hearing. ECF Nos. 51, 52.
23 On April 13, 2009, the court held a hearing on the motion to withdraw and granted the motion.
24 ECF No. 56.
25    On May 26, 2009, plaintiffs again sought defendants' default for failure to answer, which
26 the clerk entered on June 1, 2009. ECF Nos. 58, 61. Then, on June 10, 2009, the court held a

1 status conference but defendants failed to appear. ECF No. 63. Accordingly, defendants were
2 ordered to show cause why they should not be sanctioned. They were are given until June 18,
3 2009 to file an answer. ECF No. 64.

4 Defendants did not respond to the order, but a review of cases pending in the U.S.
5 Bankruptcy Court for the Eastern District of California revealed that Mis Amigos filed for
6 Chapter 11 bankruptcy on June 10, 2009. Therefore, on June 26, 2009, the action was stayed
7 pursuant to 11 U.S.C. § 362. ECF No. 65. The order staying the case stated that the following
8 matters remained unresolved and would be addressed upon termination of defendants'
9 bankruptcy proceeding or an order granting relief from the automatic stay: (1) the failure of
10 defendants to respond to the court's order to show cause, (2) the failure of defendants to file an
11 answer and status report, (3) appropriate sanctions to be levied against defendants, including
12 whether to require reimbursement for the expenses associated with the travel and appearance of
13 plaintiffs' counsel at the last hearing given defendants failure to inform the court or plaintiffs of
14 the bankruptcy filing, and (4) defendants' motion for default judgment. *Id.* at 2-3.

15 On September 23, 2010, plaintiffs filed a notice of dismissal indicating that on June 8,
16 2010, the Bankruptcy Court dismissed the Mis Amigos' Chapter 11 case and that the case was
17 closed on July 23, 2010. ECF No. 66.

18 Accordingly, on October 7, 2010, the court lifted the bankruptcy stay; directed the parties
19 to show cause, in writing, why they should not be sanctioned for failing to comply with the June
20 26, 2009 order (which required that the court be notified within 10 days of the resolution of the
21 bankruptcy proceedings), including dismissal of this action and/or the entry of default judgment
22 against defendants; and directed the parties to file a joint status report on or before October 25,
23 2010, indicating the status of this action now that the stay has been lifted and any outstanding
24 issues that must be resolved by the court. ECF No. 68.

25 On October 25, 2010, plaintiffs filed a status report and a response to the order to show
26 cause. ECF Nos. 69, 70. Plaintiffs explained that although they filed a claim in the bankruptcy

4

proceeding, they otherwise were not substantially involved in the case, and therefore did not closely monitor the bankruptcy case once it was converted from a Chapter 11 bankruptcy to a Chapter 7 bankruptcy. ECF No. 70 at 2. Plaintiffs' status report also asserts that plaintiffs were unable to locate defendants and notes that the clerk entered default against both defendants on June 1, 2009. Plaintiffs requested in that report that the court enter default judgment against both defendants. ECF No. 69 at 2. Plaintiffs further requested that the court "schedule a prove up hearing for computation of damages, fees, costs and penalties" and stated that they could conduct the prove up hearing promptly. *Id.*

Therefore, on November 9, 2010, the court discharged the October 7 order to show cause and instructed defendants to notice a motion for default judgment in accordance with Local Rule 230. ECF No. 71 at 3.

Plaintiffs did not file a motion for default judgment and on April 27, 2012, the court issued an order directing plaintiffs to show cause why this action should not be dismissed for failure to prosecute. ECF No. 72. On May 11, 2012, plaintiffs filed a response to the order to show cause, apologizing for the delay in seeking a default judgment and explaining that the process of seeking default "has been hamstrung due to the utter disappearance of Defendant, which has left Plaintiffs with the challenge of assembling sufficient evidence capable of proving claims for purpose of entry of default judgment. Nonetheless, during this time Plaintiffs' counsel has diligently contacted class members, collected timekeeping and payroll documents from Defendants' former employees and analyzed these documents in an effort to create a reliable class damage model." ECF No. 73. Also on May 11, 2012, plaintiffs filed the present motion for default judgment. ECF No. 74; *see also* ECF Nos. 75-77, 80.

/////
/////
/////
/////

II. DISCUSSION

    A.    Standards

It is within the sound discretion of the district court to grant or deny an application for default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)).

As a general rule, once default is entered, the factual allegations of the complaint are taken as true, except for those allegations relating to damages. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citations omitted). However, although well-pleaded allegations in the complaint are admitted by defendant's failure to respond, "necessary facts *not* contained in the pleadings, and claims which are *legally insufficient*, are *not* established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

    B.    Entitlement to Default Judgment

Here, the court finds that the majority of the *Eitel* factors weigh in favor of granting plaintiffs' motion for default judgment.

        1.    Possibility of Prejudice to Plaintiffs

The first *Eitel* factor considers whether plaintiffs would suffer prejudice if default judgment is not entered, and such potential prejudice to plaintiffs militates in favor of entering default judgment. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Here, plaintiffs would potentially

face prejudice if the court did not enter default judgment because absent entry of default judgment, plaintiffs would be without another recourse for recovery. Accordingly, the first *Eitel* factor favors the entry of default judgment.

        2/3.       <u>Merits of Plaintiffs' Substantive Claim/Sufficiency of the Complaint</u>

The second and third factors also favor the entry of default judgment. As a general rule, once default is entered, the factual allegations of the complaint are taken as true, except for those allegations relating to the damages. *TeleVideo Systems, Inc.*, 826 F.2d at 917-18. Here, taking plaintiffs' allegations as true, plaintiffs' complaint and evidence in support of their default judgment motion establish that they are entitled to relief on the following claims: (1) the individual plaintiff's unpaid overtime claims under California Labor Code sections 510, 1194, and 1194.2 (third claim for relief)[1]; (2) PAGA rest period wages under California Labor Code sections 226.7, 512, and Wage Order 7 (fifth and eleventh claims for relief); and (3) PAGA waiting time penalties under California Labor Code sections 201, 202, and 203 (sixth and eleventh claims for relief).[2]

        a.  <u>Individual Plaintiffs' Unpaid Overtime Claims</u>

The Industrial Welfare Commission ("IWC") "is the state agency empowered to formulate regulations (known as wage orders) governing employment in the State of California." *Tidewater Marine Western, Inc. v. Bradshaw,* 14 Cal. 4th 557, 561 (1996). "IWC has promulgated 15 [industry and occupation wage] orders – 12 orders cover specific industries and 3 orders cover occupations – and 1 general minimum wage order which applies to all California employers and employees (excluding public employees and outside salesmen)." *Monzon v.*

---

[1] In their default judgment motion, plaintiffs do not seek PAGA penalties for their claim for unpaid overtime. *See* ECF No. 85 at 4; *see also* ECF No. 83-1.

[2] Plaintiffs only seek default judgment on those claims. *See* ECF No. 85 at 2-8. Also, because defendants failed to produce sufficient records, the PAGA penalties are further narrowed to include only those penalties that relate to violations at Mis Amigos' Bay Point California store. Any PAGA penalties relating to other Mis Amigos locations are dismissed without prejudice. *Id.* at 3.

7

*Schaefer Ambulance Service, Inc.*, 224 Cal. App. 3d 16, 29 (1990).  Wage Order 16-2001, Cal Code Regs. tit. 8, § 11160, provides that "employees . . . shall not be employed more than eight (8) hours in any workday, or more than forty (40) hours in any workweek unless the employee receives one and one-half (1½) times such employee's regular rate of pay for all hours in the workweek.  Employment beyond eight (8) hours in any workday, or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime . . . ." *See also* Cal. Lab. Code § 1810 ("Eight hours labor constitutes a legal day's work in all cases where the same is performed under the authority of any law of this State, or under the direction, or control, or by the authority of any officer of this State acting in his official capacity, or under the direction, or control or by the authority of any municipal corporation, or of any officer thereof."); Cal. Lab. Code § 510(a) (providing that any work in excess of eight hours in one workday, any work in excess of 40 hours in any one workweek, and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee; any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee; and any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee).

Under California Labor Code section 1194(a), "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Additionally, under California Labor Code section 204.3(a), "[a]n employee may receive, in lieu of overtime compensation, compensating time off at a rate of not less than one and one-half hours for each hour of employment for which overtime compensation is required by law. If an hour of employment would otherwise be compensable at a rate of more than one and one-half

/////

times the employee's regular rate of compensation, then the employee may receive compensating time off commensurate with the higher rate."

Plaintiffs allege that they were employed at Mis Amigos as non-exempt employees. Compl. ¶¶ 1-3; Miguel Velasco Decl., ECF No. 75, ¶ 2; Nicolas Velasco Decl., ECF No. 77, ¶ 2; Elieser Serrano Decl., ECF No. 84, ¶ 2. Plaintiffs allege that they never performed any administrative, executive, or professional duties at Mis Amigos, yet were paid by salary and not by hour. Compl. ¶ 19; Miguel Velasco Decl. ¶¶ 5-6; Nicolas Velasco Decl. ¶¶ 5-6; Serrano Decl. ¶¶ 5-6. Plaintiff Miguel Velasco avers that he was generally paid between $800-900 per pay period regardless of how many hours he worked. Miguel Velasco Decl. ¶ 6. Plaintiff Nicolas Velasco avers that he was generally paid around $1300 per pay period regardless of how many hours he worked. Nicolas Velasco Decl. ¶ 6. Plaintiffs allege that they regularly worked more than 8 hours per day and more than 40 hours per week and were not paid for that overtime. Compl. ¶¶ 31, 36, 68; Miguel Velasco Decl. ¶ 7; Nicolas Velasco Decl. ¶ 7; Serrano Decl. ¶ 7. Plaintiffs Nicolas Velasco and Elieser Serrano aver that from 2001-2007, they worked as many as 60-70 hours per week, but were never paid for that overtime. Nicolas Velasco Decl. ¶ 7; Serrano Decl. ¶ 7. Plaintiff Nicolas Velasco also avers that around the summer of 2007, he stopped clocking in or out for 3 months straight because Gonzalez gave the order for the manager to tell him that he needed to work without clocking in or out because Gonzalez wanted to avoid problems with the Labor Commissioner. Nicolas Velasco Decl. ¶ 10. Plaintiffs also allege that while plaintiffs were employed at Mis Amigos, defendants failed to maintain or furnish time records reflecting the true hours that plaintiffs worked, and failed to keep and provide required employment records in violation of California Labor Code and Regulations. Compl. ¶ 39.

/////
/////
/////

1    Plaintiffs' allegations are sufficient to demonstrate that they are entitled to overtime
2 wages pursuant to California Labor Code sections 510, 1194, and 1194.2, and Wage Order 7,
3 which establish an eight hour workday and forty hour workweek (plaintiffs' third cause of
4 action).
5    The evidence submitted by plaintiffs is also sufficient to demonstrate that plaintiff Elieser
6 Serrano is entitled to $46,872.62 for unpaid overtime wages, plaintiff Nicolas Velasco is entitled
7 to $117,905.97 for unpaid overtime wages, and plaintiff Miguel Velasco is entitled to $32,599.38
8 for unpaid overtime wages. *See Rodriguez v. Wallia*, 2012 WL 1831579 (N.D. Cal. Apr. 18,
9 2012) ("Rule 55(b)(2) allows, but does not require, the court to conduct a hearing on damages, as
10 long as it ensures that there is an evidentiary basis for the damages awarded in the default
11 judgment.") (quoting *Action S.A. v. Marc Rich & Co. Inc.*, 951 F.2d 504, 508 (2nd Cir. 1991)).
12 Where an employer fails to maintain accurate and complete payroll records, California courts
13 shift the burden of calculating the number of uncompensated hours to the employer, reasoning
14 that "applying the normal burden of proof in such circumstances would unfairly penalize an
15 employee for the employer's failure to keep proper records and would allow the employer to
16 keep the benefits of the employee's labors without paying full compensation." *Amaral v. Cintas*
17 *Corp. No. 2*, 163 Cal. App. 4th 1157, 1189 (2008) (following the approach courts have applied in
18 the FLSA context) (citing *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946)); *see*
19 *also Hernandez v. Mendoza,* 199 Cal. App. 3d 721, 726-28 (1988) (shifting the burden to
20 employer when inadequate records prevented employees from proving their claims for unpaid
21 overtime hours); *Cicairos v. Summit Logistics*, *Inc*., 133 Cal. App. 4th 949, 961-63 (2005)
22 (shifting the burden to employer when inadequate records prevented employees from proving
23 their claims for unpaid meal and rest breaks).
24    Here, plaintiffs have provided declarations averring that they regularly worked more than
25 8 hours per day and more than 40 hours per week and were not paid for that overtime. Plaintiffs
26 Nicolas Velasco and Elieser Serrano also aver that for approximately six years, they worked as

1  many as 60-70 hours per week, but were never paid for that overtime.  Plaintiffs also allege that
2  while plaintiffs were employed at Mis Amigos, defendants failed to maintain or furnish time
3  records reflecting the true hours that plaintiffs worked, and failed to keep and provide required
4  employment records in violation of California Labor Code and Regulations.  Plaintiffs have also
5  submitted sample payroll documents.  ECF Nos. 75-1, 77-1, 83-2, 83-3, 83-4.  Further, plaintiffs'
6  counsel has also provided a spreadsheet calculating the total amounts claimed and a declaration
7  explaining how those amounts were reached, as well as how the averages for the amount of
8  unpaid overtime was calculated:

> The damage calculation spreadsheet is attached as Exhibit 1 to this declaration. The damage model is constructed based upon the "hire date" which is derived from the "Master List" records obtained in this case (See e.g. Exhibit 4 at page 5 listing hire dates of employees) as well as termination dates which are also listed on the Master List records.  *Id*.  The wage rate comes from the Master List as well.  *Id*.  We use a workday ratio of 68.49% which essentially assumes that workers are working 250 days per year (50 full weeks a year). . . .
>
> Attached as Exhibit 2, 3 and 4 are sample evidence used to create the damage calculations in this case.  For the individual plaintiffs, I also calculated the unpaid hours of work per day.  I accomplished this using the available time cards for each individual and averaging the total amount of overtime per workday.  See e.g. Exhibit 4 at page 1.  To calculate the unpaid time for individual damages with interest I calculated the average unpaid time times the wage rate time the interest multiplier times the number of work days by the employee.

17  2d Supp. Decl. of Stan Mallison, ECF No. 83, ¶ 3, 4, and Ex. 1 thereto, ECF No. 83-1.
18       Defendants have the burden to rebut that evidence, but because they have "failed to
19  appear in this litigation, [plaintiffs'] evidence stands unrefuted." *Rodriguez v. Wallia*, 2012 WL
20  1831579, at *3 (N.D. Cal. Apr. 18, 2012).  Based on the unrefuted evidence submitted, the court
21  can reasonably infer that plaintiff Nicolas Velasco worked an average of 4.04 hours of unpaid
22  overtime per day during the time he was employed at Mis Amigos and is entitled to $117,905.97
23  in unpaid overtime wages.  The court can also reasonably infer that plaintiff Miguel Velasco
24  worked an average of 1.32 hours of unpaid overtime per day during the time he was employed at
25  Mis Amigos and is entitled to $32,599.38 in unpaid overtime wages.  Finally, the court can
26  reasonably infer that plaintiff Elieser Serrano worked an average of 1.0 hours of unpaid overtime

per day during the time he was employed at Mis Amigos and is entitled to $46,872.621 for unpaid overtime wages.

### b. PAGA Claims

#### I. Rest Period Wages

California Labor Code Section 226.7 provides that "[n]o employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission," and "[i]f an employer fails to provide an employee a meal period or rest period . . . , the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." Cal. Labor Code § 226.7. IWC Wage Order 7 requires employers to provide employees with one ten minute rest break for every four hours of work or major fraction thereof. Cal. Code Regs. tit. 8, § 11070 (12) ("Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. . . . If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided.").

Plaintiffs allege that it was the practice of Mis Amigos to not permit workers to take 10 minute rest breaks and plaintiffs were not paid additional wages in lieu thereof. Compl. ¶¶ 32, 85-91; Miguel Velasco Decl. ¶ 9; Nicolas Velasco Decl. ¶ 9; Serrano Decl. ¶ 9. That evidence and those allegations, which are not rebutted by defendants, are sufficient to demonstrate that defendants failed to provide rest periods or pay additional wages in lieu thereof, in violation of California Labor Code section 226.7 and Wage Order 7.

Plaintiffs bring this claim as a non-class claim for wages on behalf of all employees at Mis Amigos' Bay Point California store pursuant to California Labor Code sections 2699 and

558. ECF No. 85 at 3. The California Private Attorneys General Act of 2004, California Labor Code §§ 2699 *et seq*. ("PAGA"), provides that "any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees[.]" Cal. Lab. Code § 2699(a). The representative action authorized by the PAGA is an enforcement action, with one aggrieved employee acting as a private attorney general to collect penalties from employers who violate the Labor Code. *Arias v. Super. Ct.*, 46 Cal.4th 969, 984 (2009).

The Labor Code specifically provides for such civil penalties for violation of its provisions asserted as claims in this action. Cal. Lab. Code § 558 ("(a) Any employer of other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as following: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to any amount sufficient to recover underpaid wages.").

Here the rest period claim is for a violation of Section 12 of Wage Order 7. As discussed above, defendants have the burden to rebut the evidence offered by plaintiffs, but since they have "failed to appear in this litigation, [plaintiffs'] evidence stands unrefuted."[3] *Rodriguez*, 2012 WL 1831579, at *3. Due to the lack of records detailing employees' schedules, plaintiffs' counsel composed a damage model that accounts for the lack of provision of these rest breaks. Attached as Exhibit 1 to Second Supplemental Declaration of Stan Mallison is a list of Bay Point

---

[3] Plaintiffs also allege that they "have complied with the pre-filing requirements of PAGA, giving notice to all DEFENDANTS and the Labor & Workforce Development Agency ("LWDA") of the violations herein alleged by certified mail with return receipt. The LWDA declined to investigate and gave notice to DEFENDANTS and PLAINTIFFS that it would not investigate." Compl. ¶ 22.

employees and the penalties owed to the State of California pursuant to PAGA (in the form of unpaid wages) as of July 11, 2012.  The model accounts for the hire and termination dates of each employee, estimates the number of actual work days (average of 68.49% of calendar days), and applies statutory interest pursuant to California Labor Code section 218.6.  The model starts the calculation period from the later of the start of the PAGA period (including all statutory tolling of the statute of limitations) or the hire date and carry it forward to December 3, 2007 – the date when the testimony establishes that the rest period violations ceased for days worked.  Mallison Decl., ECF No. 76, ¶ 18; 2d Supp. Decl. of Stan Mallison, ECF No. 83, ¶ 3, and Ex. 1 thereto, ECF No. 83-1.  The model also incorporates simple interest pursuant to California Labor Code section 218.6 and uses a wage interest midpoint (which is a calculation of the "midpoint" of the dates in which wages are owed pursuant to this calculation) to serves as the basis for estimated interest owed covering the entire wages owed.  The wage interest multiplier is the statutory pre-judgment multiplier (10% simple interest) covering the time between the interest midpoint for each employee's wage claims up to the present.  Wages plus interest is the rest period wages due times the wage interest multiplier.  *Id.*  According to plaintiffs' counsel, and Exhibit 1 to his second supplemental declaration, the wage damages resulting from the failure to provide rest periods (with statutory interest) is $449,306.07.

The PAGA rest period claim is brought by Nicolas Velasco, Elieser Serrano, and Miguel Velasco on behalf of the State of California, however, pursuant to California Labor Code §558(3), "wages recovered pursuant to this section shall be paid to the affected employee."  Therefore, plaintiffs Serrano, Nicolas Velasco, and Miguel Velasco are entitled to payment of their individual claims as well as the PAGA wage penalties relating to their work for Mis Amigos.  Similarly, the other Bay Point employees are entitled only to the PAGA wage penalties relating to their work for Mis Amigos.  Pursuant to PAGA as missed rest period wages, an additional $31,248.42 is owed to plaintiff Serrano; an additional $19,456.43 is owed to plaintiff Nicolas Velasco; and an additional $16,446.53 is owed to plaintiff Miguel Velasco.  Any monies

paid to plaintiffs individually under this claim constitute an off-set to any monies owed to the State of California.

Both defendants are liable for these penalties. Plaintiffs allege that Mis Amigos is a California corporation that operates a retail business, and defendant Gonzalez is a shareholder, officer, agent, and owner of Mis Amigos, who exercises complete control and dominance of the business. Compl. ¶¶ 17-18, 45, 46. Plaintiffs also allege that Gonzalez was the owner and head manager of Mis Amigos; he hired plaintiffs, set their schedules and salaries; oversaw workers' schedules and breaks and caused the violations at issue by directing all policies. Compl. ¶¶ 18-19, 46-50; Miguel Velasco Decl. ¶ 4; Nicolas Velasco Decl. ¶ 4; Serrano Decl. ¶ 4.

Plaintiffs' allegations are sufficient to establish liability for both defendants – Mis Amigos and Gonzalez – because they both amount to an "employer" for purposes of the California statutes at issue. Although "[t]he California Supreme Court has held that a corporate officer cannot be liable for the wage and hour violations of the corporation on the basis of his status alone," a corporate agent may be liable to an employee on an alter ego theory or where a statute expressly provides for it. *Ontiveros v. Zamora*, 2009 WL 425962, at *5 (E.D. Cal. Feb. 20, 2009) (citing *Reynolds v. Bement*, 36 Cal. 4th 1075 (2005)). Here, plaintiffs contend that defendant Gonzalez is liable as a joint employer under California Labor Code section 558. Section 558 provides that "[a]ny employer or other person acting on behalf of an employer who violates, or *causes to be violated*, . . . any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty. . . ." Cal. Lab. Code § 558 (emphasis added). "[T]he text of this section expands liability to include agents of the employer." *Ontiveros*, 2009 WL 425962, at *6 (citing *Reynolds*, 36 Cal. 4th at 1089). Here, plaintiffs has adequately alleged that Gonzalez, in his capacity as owner of Mis Amigos, "caused" the rest period violations. Mallison Decl. ¶ 11; Compl. ¶ 19.

/////

/////

### c. Waiting Time Penalties

Plaintiffs also allege that defendants failed to timely pay plaintiffs and terminated class members their full pay at the time of termination. Compl. ¶¶ 41, 93-101; Mallison Decl. ¶ 19-22. These allegations are sufficient to establish that defendants failed to pay plaintiffs their full wages at the time of termination, in violation of California Labor Code sections 201, 202, and 203.

Plaintiffs contend that the resulting damages under California Labor Code section 256 are $152,115 (as noted in Exhibit 1 to Second Supplemental Declaration of Stan Mallison). Cal. Lab. Code 256 (providing for a "civil penalty in an amount not exceeding 30 days pay as waiting time under the terms of Section 203."); *Mamika v. Barca*, 80 Cal. Rptr. 2d 175, 178 (1998) ("The failure to pay wages has nothing to do with the number of days an employee works during the month . . . the critical computation required by section 203 is the calculation of a daily wage rate, which can then be multiplied by the number of days of nonpayment, up to 30 days"). Pursuant to PAGA as waiting time penalties, an additional $5,700 is owed to plaintiff Serrano; an additional $3,900 is owed to plaintiff Nicolas Velasco; and an additional $3,000 is owed to plaintiff Miguel Velasco. Again, any monies subsequently paid to plaintiffs individually under this claim constitute an off-set to any monies owed to the State of California.

### 4. Sum of Money at Stake

Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc*., 238 F. Supp. 2d at 1177; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc*., 219 F.R.D. 494, 500 (C.D. Cal. 2003). Here, because the amount of damages sought is significant, the sum of money at stake weighs against the entry of default judgment.

### 5. Possibility of a Dispute Concerning the Material Facts

The fifth factor also weighs in favor of granting plaintiffs' motion for default judgment.

/////

Here, the court may assume the truth of the well-pleaded facts in plaintiffs' complaint following the clerk's entry of default and, thus, there is a very low likelihood that any genuine issue of material fact exists. *See, e.g., Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); *accord Philip Morris USA, Inc.*, 219 F.R.D. at 500; *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Defendants have not answered plaintiff's complaint or denied liability, and are now in default. Therefore, this factor weighs in favor of granting default judgment.

### 6. Whether the Default Was Due to Excusable Neglect

The sixth factor also weighs in plaintiffs' favor. Upon review of the record before the court, the undersigned finds that the default was not due to excusable neglect. As noted above, defendants have not answered plaintiff's complaint, even though they were aware of it. Thus, it cannot be said that they were not served with the summonses and complaints. The record suggests that defendants have chosen not to defend themselves in this action and not that the default resulted from any excusable neglect. Accordingly, this *Eitel* factor favors the grant of default judgment. *See Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants were properly served with the complaint, the notice of entry of default, and the papers in support of the motion for default judgment).

### 7. Policy Favoring Decisions on the Merits

Finally, the seventh *Eitel* factor weighs against granting the motion for default judgment. The strong policy underlying the Federal Rules of Civil Procedure favors decisions on the merits. *Eitel*, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see Craigslist, Inc. v. Naturemarket, Inc.*, 2010 WL 807446, at *16 (N.D. Cal. Mar. 5, 2010); *ACS Recovery Servs., Inc. v. Kaplan*,

2010 WL 144816, at *7 (N.D. Cal. Jan.11, 2010); *Hartung v. J.D. Byrider, Inc.*, 2009 WL 1876690, at *5 (E.D. Cal. June 26, 2009). Accordingly, although there is a strong policy favoring decisions on the merits, that policy does not preclude the entry of default judgment here.

Therefore, because the *Eitel* factors weigh in favor of granting default judgment to plaintiffs, the undersigned will recommend granting plaintiffs' motion.

### C.     Attorney's Fees and Costs

Plaintiffs are also entitled to attorney's fees and costs. Cal. Lab. Code §§ 218.5, 1194; *see also Drumm v. Morningstar, Inc.*, 695 F. Supp. 2d 1014, 1018 (N.D. Cal. 2010) (noting that under California law, awarding attorney's fees is "mandatory" in unpaid wage claims).

Courts in the Ninth Circuit calculate an award of attorney's fees using the lodestar method, whereby a court multiplies "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citation omitted). A party seeking attorney's fees bears the burden of demonstrating that the rates requested are "in line with the prevailing market rate of the relevant community.'" *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006). Generally, "the relevant community is the forum in which the district court sits." *Camacho*, 523 F.3d at 979 (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). Typically, "affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

The court has reviewed the records provided by plaintiffs and finds the rates charged by the attorneys that have been in involved in this case to be reasonable.[4] In light of the procedural

---

[4] Stan Mallison (Partner) expended 163.5 hours at a rate of $650/hour, for a total of $106,275; Hector Martinez (Partner) expended 89.5 hours at a rate of $650/hour, for a total of $58,175; Marco Palau (Sr. Assoc.) expended 50.75 hours at a rate of $495/hour, for a total of $25,121; Joe Sutton (Jr. Assoc.) expended 48.5 hours at a rate of $395/hour, for a total of

history of this case and the amount of work required by plaintiffs' counsel in ascertaining records and calculating the amounts owed, the court further finds the number of hours expended to be reasonable. ECF Nos. 76, 80, 83, Similarly, plaintiffs' $3,558.75 in costs are also reasonable. Therefore, plaintiffs should be awarded $212,935.00 in attorney's fees and $3,558.75 in costs. Defendants are jointly and severally liable for this obligation to plaintiffs' counsel pursuant to California Labor Code sections 2699 (g)(1) (making attorney's fees and costs recoverable against both Defendants) and 1194.

III.   CONCLUSION

Based on the foregoing findings, IT IS HEREBY RECOMMENDED that:

1. Plaintiffs' motion for default judgment, ECF No. 74, be granted.

2. Plaintiff Elieser Serrano be awarded $83,821.04, which includes $46,872.62[1] for unpaid overtime wages; an additional $31,248.42 pursuant to PAGA as missed rest period wages; and $5,700 for waiting time penalties pursuant to Labor Code sections 256 and 203.2.

3. Plaintiff Nicolas Velasco be awarded $141,262.40, which includes $117,905.97 for unpaid overtime wages; $19,456.43 pursuant to PAGA as missed rest period wages; and $3,900 for waiting time penalties.

4. Plaintiff Miguel Velasco be awarded $52,045.92, which includes $32,599.38 for unpaid overtime wages; $16,446.53 pursuant to PAGA as missed rest period wages; and $3,000 for waiting time penalties.

5. Any monies subsequently paid to Elieser Serrano, Nicolas Velasco, and/or Miguel Velasco constitute an off-set to any monies owed to the State of California as described below. Defendants are jointly and severally liable for this obligation to plaintiffs except as to the waiting time penalties, which are not recoverable against Uriel Gonzalez (making Uriel Gonzalez's

---

$19,157.50; Jessica Juarez (Jr. Assoc.) expended 1.25 hours at a rate of $395/hour, for a total of $493.75; and Franscoise Hansen (accounting specialist) expended 24.75 hours at a rate of $150/hour, for a total of $3,712.50.

obligation a total of $78,121.04 to Elieser Serrano for both his individual claims as well as his recoveries via PAGA; $137,362.40 to Nicolas Velasco for both his individual claims as well as his recoveries via PAGA; and $49,045.92 to Miguel Velasco for both his individual claims as well as his recoveries via PAGA.

      6. The State of California be awarded $796,210.61 as penalties payable to and for the benefit of the State of California against defendant Mis Amigos Inc. Of this amount, $645,895.61 is awarded jointly against Uriel Gonzalez and Mis Amigos Inc. pursuant to California Labor Code section 558 for a penalty in the amount of unpaid wages. The difference between these amounts is accounted for by waiting time penalties of $152,115 for which Uriel Gonzalez is not liable. Any monies paid to the individual plaintiffs above constitute an off-set to any monies owed to the State of California.

      7. Plaintiffs' counsel be awarded $3,558.75 in costs and $212,935 in attorney's fees. Defendants are jointly and severally liable for this obligation to plaintiffs' counsel pursuant to California Labor Code sections 2699(g)(1) (making attorney's fees and costs recoverable against both defendants) and 1194.

      8. The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 22, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE